|   |   |   |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | UNITED STATES DISTRICT COURT |
| 9 | | NORTHERN DISTRICT OF CALIFORNIA |
| 10 | | SAN JOSE DIVISION |

| | | |
|---|---|---|
| TESSERA, INC., | ) | Case No. 5:10-CV-04435-EJD (HRL) |
| | ) | |
| Plaintiff, | ) | DISCOVERY DISPUTE |
| | ) | JOINT REPORT #3 |
| v. | ) | |
| | ) | |
| UTAC (TAIWAN) CORPORATION, | ) | |
| | ) | Judge: Howard L. Lloyd |
| Defendant. | ) | |
| | ) | |

**Issue:** Whether UTAC Taiwan Corporation ("UTC" or "UTAC Taiwan") must refrain from claiming privilege during Ken Hsieh's deposition based only on the status of Mr. Hsieh, a UTC employee who has legal training and a legal role at UTC but is not licensed to practice law.

**Joint Meeting:** Joseph Lipner, co-lead counsel for Tessera, and David Herrington, co-lead counsel for UTC, met in person on February 27, 2013, in Menlo Park, California for approximately thirty minutes to discuss this issue, among others. After numerous follow-up emails and telephone calls, the parties stipulated to extend the deadline to file a joint report on this issue (ECF. No. 111), and the Court extended the deadline to March 27, 2013 (ECF. No. 112).

**Close Of Discovery:** The fact discovery cut-off was February 28, 2013.

**Attestation Of Compliance:** Undersigned counsel hereby certify that they have read and complied with Judge Lloyd's Standing Order Re: Civil Discovery Disputes.

**Background And Dispute**

In this breach of contract case, Tessera has filed claims alleging that UTC has breached the parties' TCC License and Joint Cooperation Agreement (the "Agreement") by, among other things, refusing to pay royalties due under the Agreement after September 23, 2010. The parties dispute the basis on which UTC is obligated to pay royalties, and the Court has limited Phase I of the case to this issue of contract interpretation. The present dispute involves UTC's prospective deposition objections and instructions based on claims of attorney-client privilege based on the status of Ken Hsieh, a UTC employee who has legal training and a legal role at UTC but is not licensed to practice law. UTC has affirmed that, to the extent counsel for Tessera asks a deposition question regarding communications with Mr. Hsieh, UTC will not refrain from asserting the privilege, where appropriate, and instructing Mr. Hsieh not to answer such deposition questions on the basis of attorney-client privilege based on Mr. Hsieh's status at UTC.

**Tessera's Position**

UTAC Taiwan asserts that communications involving Mr. Hsieh are protected by the attorney-client privilege despite the fact that he is not authorized to practice law in Taiwan or any other country. Instead, UTAC Taiwan argues only that Mr. Hsieh is the "functional equivalent" of an attorney in the United States because he performs law-related functions in-house at UTAC Taiwan—even though he is admittedly not authorized to practice law. No privilege exists under California law for communications with the "functional equivalent" of an attorney. Nonetheless, UTAC Taiwan has refused to even provide a date that Mr. Hsieh is available for deposition because it believes it can claim privilege based on Mr. Hsieh's status.

On February 14, 2013, the Court ordered UTAC Taiwan to produce Mr. Hsieh for deposition. (ECF No. 109.) Soon after, Tessera repeatedly began asking for Mr. Hsieh's availability. *See, e.g.*, Lipner Email to Herrington, Feb. 19, 2013; Lipner Email to Herrington, Feb. 20, 2013. At the same time, Tessera questioned UTAC Taiwan's claim of attorney-client privilege with respect to documents listed on UTAC Taiwan's privilege log where the only purported attorney was Mr. Hsieh. At that point, UTAC Taiwan affirmed its position that Mr. Hsieh is an "attorney" for purposes of attorney-client privilege. Although the parties resolved the

issues with respect to the documents on UTAC Taiwan's privilege logs, UTAC Taiwan has continually refused to produce Mr. Hsieh for deposition—or even provide dates he is available—until the issue is resolved. *See, e.g.*, Chotiros Email to Evans, Mar. 22, 2013 (writing over a month after Tessera first asked for Mr. Hsieh's availability that "we will get back to you on possible dates. Please understand that we are agreeing to only one deposition for Mr. Hsieh, regardless of the timing for resolution of your privilege issue relating to Mr. Hsieh.").

**1. Mr. Hsieh Is Not Authorized to Practice Law in Taiwan or Anywhere Else**

Under California law,[1] the attorney-client privilege applies only to communications with a "lawyer," defined as "a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation." Cal. Evid. Code § 950. As the party asserting privilege, UTAC Taiwan must *prove facts* establishing the privilege. *State Farm Fire and Cas. Co. v. Super. Ct.*, 54 Cal. App. 4th 625, 639 (1997) ("When a party asserts the attorney-client privilege, it is incumbent upon that party to prove the preliminary fact that a privilege exists."); *Costco Wholesale Corp. v. Super. Ct.*, 47 Cal. 4th 725, 733 (2009) (party claiming privilege "has the burden of establishing the preliminary facts necessary to support its exercise"). UTAC Taiwan can satisfy that burden only by "present[ing] evidence which establishes the existence of a communication that falls within the privilege." *State Farm*, 54 Cal. App. 4th at 640-41 (emphasis added).

UTAC Taiwan has admitted during the meet and confer process that Mr. Hsieh is not authorized to practice law in any jurisdiction. UTAC Taiwan's witnesses similarly testified that Mr. Hsieh is not authorized to practice law even in Taiwan. For example, Johnson Hsu, UTAC Taiwan's president, testified as follows with respect to Ken Hsieh:

```
Q.    Is he a lawyer?
A.    No.
Q.    Who does he work for?
A.    Wendy Pan.
Q.    Is Wendy a lawyer?
A.    Finance.
```

---

[1] California law governs the determination of the "existence and the extent of the claimed [attorney-client] privilege" in a diversity case like this one. *Star Editorial v. United States Dist. Ct.*, 7 F.3d 856, 859 (9th Cir. 1993).

Hsu Depo Tr. at 15:23-16:10. Mr. Hsu also testified specifically that Mr. Hsieh "is not a qualified attorney." *Id.* at 89:24-90:6. Thus, there does not appear to be any question that Mr. Hsieh is not an attorney. Nevertheless, UTAC Taiwan has treated Mr. Hsieh, who is not an attorney and works in UTAC Taiwan's finance department, as if he were an attorney for all privilege purposes.

**2. There is No Privilege for Communications with "Functional Equivalents" of U.S. In-House Counsel**

UTAC Taiwan asks this Court to create a brand new privilege for employees who supposedly hold legal roles in foreign corporations but who are not authorized to practice law. However, California law prohibits courts from "creating new nonstatutory privileges as a matter of judicial policy." *Welfare Rights Org. v. Crisan*, 33 Cal. 3d 766, 769 (1983). "*Thus, unless a privilege is expressly or impliedly based on statute, its existence may be found only if required by constitutional principles, state or federal.*" *Id.* (emphasis added). UTAC Taiwan has not cited any California statute that expressly or impliedly provides a privilege for foreign "functional equivalents" of American lawyers. Indeed, California Rule of Court 9.44 specifically addresses "foreign legal consultants," providing that an eligible "foreign legal consultant" must be "*admitted to practice* and [be] in good standing as an attorney or counselor-at-law or the equivalent in a foreign country." Cal. Ct. R. 9.44(a)(1) (emphasis added).

Under similar circumstances, Judge Wilken recently rejected a plaintiff's argument that communications with individuals that are the "functional equivalent" of a lawyer in the United States are privileged. *Powertech Tech., Inc. v. Tessera, Inc.*, No. C 11-6121 CW (and related cases), Order Overruling Powertech Tech., Inc.'s Obj. to the Special Master's Dec. 14, 2012 Order (ECF No. 215). Judge Wilken concluded that the individuals at issue were not "attorneys" because plaintiff did not "provide[] [any] evidence that the specific four individuals at issue here were authorized by law in Japan or elsewhere to provide legal representation ." *Id.* at 4. *See also Elan Microelecs. Corp. v. Apple, Inc.*, No. C-09-01531 RS PSG, 2011 U.S. Dist. LEXIS 87989, at *20-21 (finding waiver of privilege based on communications with "an individual, who alleges to be the functional equivalent of in-house counsel in the United States but is not actually at attorney

in Taiwan"). Judge Wilken reiterated this conclusion just last week. *Powertech Tech., Inc. v. Tessera, Inc.*, No. C 11-6121 CW (and related cases), Order Den. PTI's Mot. To Stay Pending Writ of Mandamus, Granting Mot. To Seal (ECF No. 255).

Furthermore, UTAC Taiwan has not argued (nor could it) that it reasonably believed these individuals were "authorized to practice law." UTAC Taiwan has not presented any authority suggesting that the law of Taiwan affords a privilege to communications with non-licensed in-house legal advisors. Indeed, in-house lawyers in Taiwan that are not admitted to the Taiwanese bar may *not* claim the privilege available to those who are admitted. Tsai & Tsai Law Firm, *Taiwan*, LEX MUNDI IN-HOUSE COUNSEL AND THE ATTORNEY CLIENT PRIVILEGE (Aug. 2009), http://www.lexmundi.com/images/lexmundi/PracticeGroups/LADR/Attorney_Client_Update8.09_Main_Document.pdf, at 136 ("To be forced to disclose communications between himself and officers, directors or employees of the company he serves would depend on whether the in-house counsel is an attorney admitted to bar. If not, then such . . . attorney-client privilege would not be available."). Accordingly, UTAC Taiwan could not have reasonably believed that these individuals were "authorized to practice law in any state or nation," as required by the California Evidence Code.

Under these circumstances, there is no comity rationale for the application of the privilege. *See Malletier v. Dooney & Bourke, Inc.*, No. 04 Civ. 5316 RMB MHD, 2006 WL 3476735, at *17-18 (S.D.N.Y. Nov. 30, 2006) (rejecting the "functional equivalence" test adopted in *Renfield Corp. v. E. Remy Martin & Co.*, 98 F.R.D. 442 (D. Del. 1982), in part because neither French nor American law provided a privilege under the circumstances of the case). Instead, UTAC Taiwan's "proposed analysis amounts to cherry-picking segments of [Taiwanese] law in support of a legal protection afforded by neither [Taiwanese] nor American law." *Id.* at *18.

Accordingly, the Court should order UTAC Taiwan to refrain from claiming privilege based on the status of Mr. Hsieh, including instructing Mr. Hsieh not to answer deposition questions on the basis of attorney-client privilege where the only purported "attorney" implicated is Mr. Hsieh himself.

**UTAC Taiwan's Position**

Companies in Taiwan employ and rely upon in-house legal counsel in exactly the same way U.S. companies do: to research, analyze and provide counsel on all kinds of legal matters, including legal disputes, contracts, intellectual property, and compliance with statutes and regulations. Like their U.S. counterparts, in-house counsel in Taiwan are trained to perform this legal function – Ken Hsieh of UTC, for example, completed university studies in the law and earned an LL.B. Yet there is one formalistic difference between the U.S. and Taiwan: while the great majority of U.S. law graduates take and pass a bar exam, in Taiwan "[r]elatively few legal graduates would try to pass the bar, and a very small proportion would actually succeed." Tom Ginsburg, <u>Law and the Liberal Transformation of the Northeast Asian Legal Complex in Korea and Taiwan</u> 7 (May 16, 2006), http://papers.ssrn.com/abstract=897300. Because "the bar exam [is] treated as a separate goal for a very small proportion of those who graduated," *id.*, and of those who take it only 10% or less will pass, a "large amount of legal work is done in Taiwan" by "individuals who have degrees in law, but have not passed the bar examination." William Alford, ed., <u>Raising the Bar: The Emerging Legal Profession of East Asia</u> 369 (1st ed. 2004). Thus, the bar exam plays a very different role in Taiwan than in the U.S., and it plainly is not a requirement for serving as in-house legal counsel.

Tessera seeks to exploit this technical distinction between the U.S. and Taiwan to obtain an unjustifiable result and win an unfair advantage. Tessera has claimed the benefit of the privilege for any document touched by its own in-house legal counsel, withholding and redacting hundreds of documents on that basis. Yet Tessera seeks to deprive UTC of exactly the same benefit for its in-house legal counsel who performs exactly the same legal function.

Nothing in the applicable legal and policy principles supports, let alone compels, the result Tessera seeks. California law affords the protection of the privilege to any person "authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation." Cal. Evid. Code § 950.[2] Ken Hsieh is certainly permitted to serve as in-house counsel without having

---

[2] Because jurisdiction in this federal action is based on diversity of citizenship, state law governs attorney-client privilege claims. Fed. R. Evid. 501; <u>Star Editorial, Inc. v. United States District</u>

passed the bar exam; to do so, as noted, is very much the norm in Taiwan. And UTC reasonably believes that he is authorized to perform that function: he has received an LL.B. and is expected to provide legal counsel and advice that someone without legal training and expertise could not possibly provide. Indeed, his official title at UTC – "Legal Executive" – reflects and confirms the legal role that UTC reasonably expects him to perform.

Section 950 of the California Evidence Code does not require an individual to be licensed or to have passed a bar exam in order to be protected by the privilege. See Welfare Rights Org. v. Crisan, 33 Cal. 3d 766, 772 (1983) ("[E]ven the lawyer-client privilege set forth in Evidence Code section 950 et seq. does not require that the purported lawyer actually be one. Section 950 defines 'lawyer' for purposes of the privilege as meaning 'a person authorized, *or reasonably believed by the client to be authorized*, to practice law in any state or nation.'") (emphasis in original). Further, the Law Revision Commission Comments to Section 950 emphasize that "[t]here is ***no requirement that the lawyer be licensed to practice in a jurisdiction that recognizes the lawyer-client privilege***." 7 Cal. L. Rev. Comm. Reports 1 (1965) (emphasis supplied).

California courts recognize the importance of the attorney-client privilege, which "deserves a particularly high degree of protection in this regard since it is a legislatively created privilege protecting important public policy interests." Raytheon Co. v. Superior Court, 208 Cal. App. 3d 683, 686 (1989). "Described as a hallmark of Anglo–American jurisprudence for almost 400 years, the attorney-client privilege fosters the free and open exchanges of information and advice…. Without the privilege, it is theorized, the client would not freely speak, thereby limiting the attorney's ability to provide sound legal advice." Titmas v. Superior Court, 87 Cal. App. 4th 738, 743-44 (2001) (internal citations and quotations omitted); see also Solin v. O'Melveny & Myers, LLP, 89 Cal. App. 4th 451, 457 (2001).

---

Court for the Central District of California (Dangerfield), 7 F.3d 856, 859 (9th Cir.1993). California Evidence Code §§ 950 et seq. provide for the "lawyer-client privilege," which attaches to "confidential communication between client and lawyer" during the course of the attorney-client relationship. Cal. Evid. Code § 952.

These important policy purposes are served by a functional inquiry that considers whether the foreign attorney is authorized to practice law in the relevant jurisdiction and whether the foreign attorney in fact provides legal counsel in the context of a confidential client relationship. In the absence of California case law on this transnational issue, federal jurisprudence provides guidance. In Renfield Corp. v. E. Remy Martin & Co., S.A., a Delaware District Court took just such an approach, holding that communications with French in-house counsel are privileged notwithstanding that the in-house counsel were not members of the bar, because they had legal training, were employed to provide legal advice to the corporation, were permitted to provide legal advice, and in fact provided confidential legal advice. 98 F.R.D. 442, 444 (D. Del. 1982).

All the same reasons dictate affording the privilege to Mr. Hsieh in his role at UTC. As discussed, he majored in legal studies and graduated with a legal degree (LL.B.). He performs exactly the same function as in-house lawyers in the United States. His position at UTC is "Legal Executive" and in fact he is UTC's only in-house legal counsel. He reviews and comments on contracts, memoranda of understanding (MOUs) and other legal documents; researches any legal issues that arise in UTC's business; and provides legal analysis and advice, including with respect to disputes. He also is responsible for compliance with statutory and regulatory requirements; provides legal support for projects, transactions, and legal disputes; and assists in managing UTC's intellectual property portfolio, which includes patents and trademarks. His role cannot be described as anything other than legal, as a person not legally trained could not perform these functions.

In Taiwan, as in many countries, there is no requirement that in-house lawyers be called to a bar. The Renfield court recognized that French bar membership cannot be a dispositive criterion because "there is no clear French equivalent to the American 'bar.'" 98 F.R.D. at 444. Likewise, there is no Taiwanese equivalent to the bar in the United States. In Taiwan, as discussed, the bar exam serves a different function than in the United States: it is "treated as a separate goal for a very small proportion of those who graduated," and accordingly a "large amount of legal work is done in Taiwan" by "individuals who have degrees in law, but have not passed the bar examination." Ginsburg, *supra*, at 7; Alford, *supra*, at 369.

Principles of comity further support this functional approach. Inconsistencies in the privileges available to primary legal advisers would undermine the confidence of foreign companies in the American legal system and undermine the attorney-client privilege by preventing those companies from engaging in full and open communication with their legal advisers. To permit Tessera to withhold documents and testimony from its in-house counsel while depriving UTC of the same privilege for its in-house counsel would be contrary to principles of comity and fairness.

We note that a recent decision by Judge Wilken addressed whether employees of a Japanese company's legal department who were not lawyers were protected by the attorney-client privilege. See Powertech Technology Inc. v. Tessera, Inc., Case No. 4:11-cv-06121-CW (N.D. Cal. Jan. 18, 2003) (Docket No. 215). It is not clear from the decision whether these individuals were legally trained (as is Mr. Hsieh, who holds an LL.B.), what legal functions they perform, or what is the position in the Japanese legal system (by comparison to the Taiwan legal system) of individuals who are legally trained but have not passed a bar exam. To the extent the decision may be characterized as relevant to the issue presented here, we respectfully disagree with its result.

For the reasons set forth above, we ask the Court to afford the same privilege protection for in-house counsel of UTC as for in-house counsel of Tessera.[3]

**Tessera's Final And "Most Reasonable" Proposal For Resolution**

UTAC Taiwan should produce Mr. Hsieh for deposition and refrain from instructing him not to answer questions on the basis of attorney-client privilege where the only purported "attorney" implicated is Mr. Hsieh himself.

---

[3] We note that because Mr. Hsieh was not employed by UTC until 2008, nearly a decade after the negotiation and signing of the Patent License Agreement, his testimony is in any case likely to be of little value and does not merit intrusion into UTC's reasonable expectations of privilege and confidentiality. Further, with respect to the emails that Tessera has indicated it wishes to question Mr. Hsieh about, these were sent in August 2008 when he had just arrived at the company and was performing essentially a ministerial function as to the communications at issue.

**UTAC Taiwan's Final And "Most Reasonable" Proposal For Resolution**

For the reasons set forth above, Mr. Hsieh should be accorded the same privilege protection as in-house counsel for Tessera.

Dated: March 27, 2013

                        IRELL & MANELLA LLP

                        By: */s/ Jennifer R. Bunn*
                               MORGAN CHU
                               JOSEPH M. LIPNER
                               LAURA E. EVANS
                               JENNIFER R. BUNN
                               1800 Avenue of the Stars, Suite 900
                               Los Angeles, California 90067-4276

                        *Attorneys for Plaintiff Tessera, Inc.*

Dated: March 27, 2013

                        CLEARY GOTTLIEB STEEN & HAMILTON LLP

                        By: */s/ David H. Herrington*
                               LAWRENCE B. FRIEDMAN (*pro hac vice*)
                               DAVID H. HERRINGTON (*pro hac vice*)
                               One Liberty Plaza
                               New York, NY 10006-1470

                               MICHAEL F. HEAFEY
                               ORRICK, HERRINGTON & SUTCLIFFE LLP
                               1000 Marsh Road
                               Menlo Park, CA 94025-1015

                        *Attorneys for Defendant UTAC (Taiwan) Corporation.*

**CERTIFICATION PURSUANT TO LOCAL RULE 5-1**

Pursuant to Local Rule 5-1, I, Jennifer R. Bunn, attest that the above signatories for the Defendant have concurred and consented to the filing of this document.

DATED: March 27, 2013

                             */s/ Jennifer R. Bunn*
                             Jennifer R. Bunn