E-Filed 9/4/2015

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TESSERA, INC.,<br><br>          Plaintiff,<br><br>     v.<br><br>UTAC (TAIWAN) CORPORATION,<br><br>          Defendant. | Case No.  10-cv-04435-EJD   (HRL)<br><br>**ORDER RE: DISCOVERY DISPUTE JOINT REPORTS 15 AND 16**<br><br>Re: Dkt. Nos. 337, 339 |

        Plaintiff Tessera, Inc. ("Tessera") sues Defendant UTAC (Taiwan) Corporation ("UTC") for alleged failures to pay royalties under a license agreement. The parties initially disputed the criteria for determining which UTC products are royalty-bearing. The court ruled on summary judgment motions related to contract interpretation. Tessera then served UTC with infringement disclosures identifying the products that Tessera contends are royalty-bearing under the agreement. Tessera identified 32 claims of 12 licensed patents. Tessera also contended that two types of UTC semiconductor packages are covered by the claims of licensed patents and are therefore royalty-bearing. Tessera asserted it did not have enough information to determine whether a third type of UTC package is covered by the patent claims. UTC disputes Tessera's contentions.

        Tessera's expert witness Dr. Bravman relied on finite element analysis—a software model that attempts to predict how an object will react to different forces and physical conditions—to form conclusions about the "compliant nature" of certain materials in UTC's packages. UTC alleges that these conclusions are a necessary component of Tessera's infringement claim.

        The court now resolves the parties' Discovery Dispute Joint Reports ("DDJR") 15 and 16. UTC requests in DDJR 15 that Tessera disclose "information and back-up data concerning the [finite element analysis] it is proffering in this case" as well as similar information about finite

1  element analysis performed in cases referenced by Tessera's expert.  UTC argues in DDJR 16 that
2  portions of Dr. Bravman's expert report, supporting materials about finite element analysis, and
3  back-up data files related to the finite element analysis in Dr. Bravman's report were improperly
4  designated as Highly Confidential.  UTC bases its requests on Requests for Production 69, 73, 81
5  and 82, as well as Interrogatory 20 and the expert-disclosure requirements of Federal Rule of Civil
6  Procedure 26.

   The court addresses these factually related DDJRs in turn.

### Discovery Dispute Joint Report 15

UTC argues that Tessera has withheld "macros, calculations, and other input files" that must have been used to calibrate Dr. Bravman's software model, and that the model cannot be accurately analyzed without this calibration information. DDJR 15 at 8.  UTC  Tessera argues that UTC requests "detailed background information about [finite element analysis] that Dr. Bravman has never seen, did not generate, and never considered in forming opinions in this case[.]" *Id.* at 3. Tessera also states that Dr. Bravman "has never even seen [or reviewed] this material"—rather, the finite element analysis was conducted by "a skilled engineer at Dr. Bravman's direction." *Id.* at 2-3.  Tessera alleges that it already went beyond any discovery obligation when it produced a broad variety of related files, back-up data, and the computer script that Dr. Bravman used. *Id.* at 5. Tessera also claims that, to the best of Tessera's knowledge, no other files responsive to UTC's request exist. *Id.*

Tessera has no obligation to produce further macros, calculations, input files, or similar materials related to the finite element analysis in Dr. Bravman's report if he has never seen or reviewed them.  Fed. R. Civ. P. 26(a)(2)(B)(ii); *see Doan v. Astrue*, 2010 WL 234935 at 7 (S.D. Cal. Jan. 12, 2010).  UTC cites *Novartis Corp. v. Ben Venue Laboratories, Inc.*, 271 F.3d 1043 (Fed. Cir. 2001), to support the argument that the internal details and methodology of an expert's software model must be disclosed completely.  But *Novartis* was not about discovery; it answered whether an expert's failure to adequately explain the inner workings of his own software model justified summary judgment on an infringement claim.  *Id.* at 1055.  The court rules at this moment on the reach of mandatory expert discovery, not a motion for summary judgment.

Tessera also has no obligation to produce materials related to finite element analysis performed in separate cases. The court previously denied UTC's request for these materials. Dkt. No. 227. Dr. Bravman's report compares the results of his analysis in this case to the results of similar analysis in those unrelated cases. UTC argues Dr. Bravman's report now compels production of "the materials from the prior suits" because Dr. Bravman has relied on them. DDJR 15 at 10. But Dr. Bravman has not considered or relied upon the requested materials to form his conclusions in this case—UTC points only to one instance where Dr. Bravman used the results of prior analysis done by other people to contextualize the results of his own analysis. *Id.* at 9. Dr. Bravman's report already contains the results Dr. Bravman relied on; Tessera need not produce related materials Dr. Bravman has not seen. Fed. R. Civ. P. 26(a)(2)(B)(ii); *see Doan v. Astrue*, 2010 WL 234935 at 7.

Tessera therefore does not need to produce any of the evidence requested by UTC in DDJR 15.

**Discovery Dispute Joint Report 16**

Tessera argues it has appropriately marked information related to its "proprietary analysis and [finite element analysis] source code script" as Highly Confidential – Attorney's Eyes Only. DDJR 16 at 4. Tessera claims that a Highly Confidential designation is appropriate because the finite element analysis was an expensive, difficult process that depended on the proprietary techniques of a specialized engineer. *Id.* at 3-4. UTC argues Tessera has not carried its burden under the parties' stipulated protective order, Dkt. No. 118 at 3, to show that the materials are "extremely sensitive" and that disclosure to another party or non-party would create "a substantial risk of serious harm that could not be avoided by less restrictive means." DDJR 16 at 8. UTC also argues that they cannot fairly evaluate the finite element analysis based on UTC semiconductor packages unless UTC can share the details of that analysis with the in-house UTC engineers who "design and make" those packages. *Id.* at 7.

The court finds Tessera incorrectly marked these materials as Highly Confidential. Tessera asserts, at most, that an expert used "confidential" and "proprietary" techniques and that the expert was paid well; this is not enough. Tessera has failed to show that a Highly Confidential

3

1 designation is appropriate, because Tessera has not described how "a substantial risk of serious
2 harm . . . could not be avoided by less restrictive means." The court also doubts whether Tessera's
3 expert relied upon "extremely sensitive" proprietary techniques in the first place—the man who
4 performed Tessera's finite element analysis described his methods as the same ones "regularly
5 used by those in the [semiconductor] packaging industry" to analyze semiconductor packages.
6 DDJR 16 at 9.

**Conclusion**

Tessera need not produce the materials requested by UTC in DDJR 15, but Tessera shall promptly designate the materials at issue in DDJR 16 as Confidential rather than Highly Confidential.

**IT IS SO ORDERED.**

Dated: September 4, 2015

_____
HOWARD R. LLOYD
United States Magistrate Judge