IRELL & MANELLA LLP
Morgan Chu (70446) (mchu@irell.com)
Joseph M. Lipner (155735) (jlipner@irell.com)
Benjamin W. Hattenbach (186455) (bhattenbach@irell.com)
Richard W. Krebs (278701) (rkrebs@irell.com)
Dominik Slusarczyk (287084) (dslusarczyk@irell.com)
Jackson S. Trugman (295145) (jtrugman@gmail.com)
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:     (310) 277-1010
Facsimile:     (310) 203-7199

*Attorneys for Plaintiff Tessera, Inc.*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| TESSERA, INC., | ) |
| Plaintiff, | ) Case No. 5:10-cv-04435-EJD |
| | ) |
| v. | ) **RESPONSIVE SEPARATE STATEMENT** |
| | ) |
| UTAC (TAIWAN) CORPORATION, | ) **UTC'S SUMMARY JUDGMENT** |
| | ) **MOTION** |
| Defendant. | ) |
| | ) Date:  February 18, 2016 |
| | ) Time:  9:00 a.m. |
| | ) Courtroom:  4 – 5th Floor |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence[1] |
|---|---|---|
| Breach of Contract | | |
| V. Tessera Has No Competent Evidence To Satisfy The "Terminal" Element That Is Required In All Of The Asserted Patent Claims | Fact 1.  Each of the Asserted Patent Claims requires at least one "terminal," which the Court construed to mean "an end point for connection of the package to the outside."<br><br>D.I. 384 at 14; TIC at 14-15, 28-29, 39, 48, 63, 83, 99, 107, 120, 127, 134); BR1 at ¶¶ 215-26. | Undisputed as to each of the claims listed in Tessera's Final Election of Claims, served 12/14/15. |

---

[1] These Responses are made for purposes of the present motion only, and Tessera reserves the right to raise additional disputes and further facts in other contexts, including at trial.  Citations to Tessera's experts' reports should be understood to include the additional evidence cited in the identified paragraphs of those reports.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

6416753



| | | |
|---|---|---|
| Fact 2. ▮▮▮▮▮ | Disputed.  Vague and ambiguous, and potentially incomplete and inaccurate. BR1 ¶ 226. |
| Fact 3. ▮▮▮▮▮ | ▮▮▮▮▮ |
| Fact 4. "BGA" is an acronym for "Ball Grid Array."<br><br>BR1 at ¶¶ 38-40. | Undisputed. |
| Fact 5. ▮▮▮▮▮ | ▮▮▮▮▮ |
| Fact 6. ▮▮▮▮▮ | ▮▮▮▮▮ |
| Fact 7. ▮▮▮▮▮ | Disputed.  Vague.  Mischaracterizes testimony, BD1 at 37:8-11, and Keng Decl. ¶ 6; and is vague, particularly as to "customers."  Further, Keng Decl. ¶ 6 lacks foundation and is hearsay. |
| Fact 8. ▮▮▮▮▮ | Disputed.  Vague, particularly as to ▮▮▮▮▮ |

| | | |
|---|---|---|
| | | ████████████████ |
| | | Additional facts:<br>The patents at issue treat "terminals" and solder balls as distinct. '480 at 3:40-42, 13:62-14:3; '587 at 6:11-15; '382 at 19:39-45; RU4 at 703:4-24, 702:11-24, 704:18-705.<br>The Court's construction of "terminal" excludes solder balls. Dkt. 384 at 13 (citing '480 at 13:62-14:3). |
| | | ████████████████ |
| VI. Tessera's Infringement Claim Under The '587 Patent Cannot Succeed, And Its Infringement Theory Would Confirm The '587 Patent's Invalidity | Fact 9. The specification of the '587 patent cotes as prior art and incorporates a Khandros patent, U.S. Patent 5,148,265.<br><br>'587 Patent, 1:25-42 | Disputed.  The '265 patent is not asserted as prior art in this case. *See* Ex. 2 at 6-11; Dkt. 387.  UTC's characterization is incomplete and inaccurate. |
| | Fact 10. The specification of the '587 patent recites that flexibility in the interposers found in the Khandros prior art patent impedes the bonding of the wires and the bonding terminals.<br><br>*Id.* at 1:43-47. | Disputed.  UTC's characterization is incomplete and inaccurate.  '587 at 1:43-47. |
| | Fact 11. The '587 patent addresses this impediment by doing something different to provide support in the bonding terminal area, such that "[t]he connecting terminals are movable relative to said microelectronic element in vertical directions, towards the microelectronic element, whereas the bonding terminals are supported against such vertical movement."<br><br>Id. at 1:64-67. | Disputed.  UTC's characterization is incomplete and inaccurate.  '587 at 1:64-67.  Furthermore, the passage cited by UTC describes only "[o]ne aspect of the invention." *Id.* at 1:51.  The specification also states that, "[i]n an alternative arrangement, the entire interposer top layer, including both the bonding terminal regions and the connecting terminal regions can be substantially rigid, but supported above the microelectronic element by a compliant layer." *Id.* at 8:35-39. |
| | Fact 12. Figure 8 of the '587 patent is the same as Figure 3 of the '265 prior art patent (with different number labels), except that it | Disputed.  The '265 patent is not asserted as prior art in this case. *See* Ex. 2 at 6-11; Dkt. 387.  Even accounting for the "different number labels" and |

6416753

| | |
|---|---|
| includes the reinforcement structure 61.<br><br>RU2 at ¶¶ 200-03. | "reinforcement structure," Fig. 8 of the '587 and Fig. 3 of the '265 are not the same.  UTC ignores the numerous differences between the patents' specifications, which describe the embodiments illustrated in the figures.  Moreover, in Fig. 3 of the '265, the layer of material between the chip and interposer has a multiplicity of holes in it, whereas the corresponding layer in Fig. 8 of the '587 does not.  BD1 at 155:15-19; '265 at Fig. 3; '587 at Fig. 8. |
| Fact 13. During prosecution of the '587 Patent, the PTO rejected the original claim (claim 26, which became claim 1) as anticipated by a prior art Khandros patent, U.S. Patent 5,346,861. | Disputed.  The U.S. Patent 5,346,861 is not asserted as prior art in this case.  *See* Ex. 2 at 6-11; Dkt. 387.  UTC's characterization is incomplete and inaccurate.  '587 File History, 11/25/98 Office Action at 2. |
| Fact 14. In response to the PTO's rejection, Tessera amended the claim by adding the words "towards said front surface of said element" and asserted that the requirement of "supporting said bonding terminals against vertical movement towards said front surface of said element to facilitate said connection" distinguished the '587 patent from the Khandros '861 Patent.<br><br>Id. at 94-97. | Disputed.  UTC's characterization is incomplete and inaccurate.  '587 File History, 2/24/99 Amendment at Office Action at 5-6 (emphasis in original). |
| Fact 15. Tessera did not dispute that the other claim limitations were anticipated by the prior art.<br><br>Id. | Disputed.  The prosecuting attorney indicated by use of the words "*inter alia*," that the amended language was only one reason, among others, that claim 26 was distinguished over the '861 patent.  '587 File History, 2/24/99 Amendment at Office Action at 5-6. |
| Fact 16. The substrate, chip, and die attach are the same in the area of the bonding terminals as they are in other areas within the periphery of the chip.<br><br>RU2 at ¶ 209. | Disputed.  Too vague and ambiguous to be intelligible.  One cannot even discern which assembly the assertion is referring to.  The assertions at RU2 at ¶ 209 are also disputed.  BR1¶¶ 372-76; Ex. 13 at 130:17-24, 126:5-23, 219:19-24, 96:8-11, 130:1-23, 131:3-5, 130:10-12, 203:11-12; Ex. 23 at 568; Ex. 24 at 139; '587 at 8:35-39. |
| Fact 17. ███████████ | Disputed.  Igor Khandros, a named inventor of the '861 patent, holds 194 U.S. patents. Ex. 39.  UTC has asserted as purported prior art only two patents having Igor Khandros as a named inventor: the '627 patent and the '977 patent. *See* Ex. 2 at 6-11; Dkt. 387. |

6416753

- 4 -

| | | |
|---|---|---|
| | ███████ | ███████ |
| | Fact 18. ████████████ | Disputed. BD1 at 155:15-19. |
| | Fact 19. ████████████ | Disputed. Vague. UTC has asserted as purported prior art only two patents having Igor Khandros as a named inventor: the '627 patent and the '977 patent. *See* Ex. 2 at 6-11; Dkt. 387. ████████████ |
| | | Additional facts: Claim 1 of '587 does not recite "doing something specific and different to provide support in the bonding terminal area" or providing "rigid resistance against vertical movement." '587 claim 1. The '587 teaches providing support including how to use a stronger interposer along with a compliant layer. '587 at 8:35-39. ████████████ |
| VII. Tessera Cannot Succeed On Its Infringement | Fact 20. Claim 1 claims a method for forming a mounting structure, and does not claim a semiconductor package. | Disputed. Claim 1 recites "A method of forming a mounting structure for a semiconductor chip comprising the steps of . . . ." '611 claim 1. |

| Claim Under The '611 Patent, And Its Infringement Theory Would Confirm The '611 Patent's Invalidity | '611 Patent, Claim 1. | |
|---|---|---|
| | Fact 21. The '611 Patent explains that the prior art Khandros Patents disclosed a package in which "[a]n elastomeric material [i.e., a liquid] is disposed between the chip and the flexible dielectric layer of the chip carrier."<br><br>'611 Patent, 1:4-6, 1:13-15, 1:33-44. | Disputed. UTC has asserted as purported prior art only two patents having Igor Khandros as a named inventor: the '627 patent and the '977 patent. *See* Ex. 2 at 6-11; Dkt. 387. UTC's characterization is incomplete and inaccurate. '611 at 1:4-6, 1:13-15, 1:33-44. |
| | Fact 22. Claim 1 requires "providing a flexible chip carrier" with "terminals" and "leads" attached. | Disputed. Claim 1 does not require what UTC argues. The Court already rejected UTC's argument. Dkt. 384 at 14-16 ("Claim 1 does not recite an ordering limitation . . . ."); Dkt. 218 at 22-23; '611 claim 1. |
| | Fact 23. [REDACTED] | [REDACTED] |
| | Fact 24. [REDACTED] | Disputed. Neither '611 claim 1 nor the [REDACTED] |
| | | [REDACTED] |

| | | |
|---|---|---|
| VIII. Tessera Cannot Establish Infringement Of The Compliant Pad Patents | Fact 25. The asserted claims of the Compliant Pad Patents each require at least one "compliant pad."<br><br>'272 Patent, Claims 1, 3, 6, and 19; '328 Patent, Claims 1 and 6; '480 Patent, Claims 1, 9, and 11; '952 Patent, Claim 34. | Undisputed. |
| | Fact 26. The Compliant Pad Patents distinguish between a compliant "pad" and a compliant "layer."<br><br>'272 Patent, 7:19-24, 4:6-10; '328 Patent, 7:23-28; '480 Patent, 7:23-28; '952 Patent, 4:1-5, 7:15-20; RU2 ¶ 111. | Disputed. UTC mischaracterizes the patents. The Court already rejected this UTC argument. Dkt. 384 at 9-10; Dkt. 218 at 17-18. |
| | Fact 27. █████████████████ | Disputed. The claims recite "compliant pads," plural. '272 claim 1; '328 claim 1; '952 claim 34. |
| | Fact 28. █████████████████ | █████████████████ |
| | Fact 29. █████████████████ | █████████████████ |
| | Fact 30. █████████████████ | Disputed. RU4 at 738:1-5, 539:9-16; BR1 ¶¶ 425, 603, 604, 605; Ex. 19 at 10, 13-15, 22-23, 30-31, 35- 38, 40-41, 44-46, 49-63; Ex. 20 at 10, 13-14, 20-21, 27-28, 32-35, 37, 41-42, 47-51; Ex. 40; Ex. 41; Ex. 42. |
| | Fact 31. Die attach adhesive has been known and used since well before 1990. | Undisputed. |

| | | |
|---|---|---|
| | *Id*. at ¶ 87. | |
| | Fact 32.  None of the Tessera patents claim to have invented die attach.<br><br>*Id.* | Undisputed. |
| | Fact 33.  [REDACTED] | Disputed.  Furthermore, the claims do not require the encapsulant to "surround a compliant pad in the region between the chip carrier and the chip." '328 claim 1; '480 claim 1.<br>The claims, as written and construed, are [REDACTED] |
| | Fact 34. The location of the alleged terminals (the solder ball pads) is determined by optimizing the number and density of solder balls that can be attached to the substrate.<br><br>RU2 at ¶ 122-25. | [REDACTED] |
| | Fact 35.  The die attach location is dictated by covering the region between the chip and the substrate so as to bond the chip to the substrate.<br><br>*Id.* | [REDACTED] |
| | Fact 36.  [REDACTED] | [REDACTED] |
| | | Additional facts:<br>[REDACTED] |

| | | |
|---|---|---|
| | | ████████ |
| IX. Tessera Cannot Establish The '952 Patent Claim's Requirement To "Electrically Connect Each Terminal To One Contact" | Fact 37. ████████ | ████████ |
| | | Additional facts: ████████ |
| X. Tessera Has Not Established A Sustainable Doctrine of Equivalents Claim | Fact 38. ████████ | ████████ |
| XI. The Compliant Pad Patents Are Invalid Based On The Khandros Patents | Fact 39. The prior art Khandros '977 and '627 patents disclose a support structure (an interposer with support elements), with a plurality of terminals on one side and a plurality of "compliant layers" on the opposite side.<br><br>'627 Patent, 4:51-61; '977 Patent, 4:43-52; RU1, Ex. A-6 at 2-9, Ex. D-6 at 2-9, E-6 at 2-7, F-5 at 1-6. | Disputed. ████████ Tessera's own patents cannot be used against the '272 or '480 for obviousness. The contents of RU1, Ex. A-6 at 2-9, Ex. D-6 at 2-9, E-6 at 2-7, F-5 at 1-6 are also disputed. *See, e.g.*, BR2 ¶¶ 420-32, 1015-29, 1366-76, 1391-97, 1719-1729. |
| | Fact 40. The prior art Khandros '977 and '627 patents disclose an interposer connected to securement | Disputed. ████████ The contents of RU1, Ex. |

6416753

- 9 -

| | | |
|---|---|---|
| | elements and the securement elements also contain a plurality of terminals on the side facing away from the chip.<br><br>'627 Patent, 7:23-26, 23:19-20; '977 Patent, 7:13-16, 23:10-11; RU1, Ex. A-6 at 8; Ex. D-6 at 8-14 | A-6 at 8; Ex. D-6 at 8-14 are also disputed. *See, e.g.*, BR2 ¶¶ 420-32, 1015-29, 1366-76, 1391-97, 1719-1729. |
| | Fact 41.  Fig. 16 of the '977 and '627 patent each disclose that the interposer contains at least one compliant layer (8303) on the side that faces the chip, and each securement element contains a compliant layer (8340) on the side that faces the chip.<br><br>'627 Patent, Fig. 16 and 24:37-42; '977 Patent, Fig. 16 and 24:27-33; RU1, Ex. A-6 at 7-9 and Ex. D-6 at 8-14 | Disputed. ███████████████<br>████████████████████<br>UTC mischaracterizes Fig. 16 and the contents of RU1, Ex. A-6 at 7-9; Ex. D-6 at 8-14 are also disputed. *See, e.g.*, BR2 ¶¶ 420-32, 1015-29, 1366-76, 1391-97, 1719-1729; '977 at 9:40-45; '627 at 9:51-55. |
| | Fact 42.  The '627 patent discloses four "elongated slot[s]," depicted as channels defined by the edge of the interposer and the edges of each of the four securement elements.<br><br>'627 Patent Figs. 16 & 17, 23:9-12 & 10:40; RU1, Ex. D-6 at 10-13. | Disputed. ███████████████<br>████████████████████<br>UTC mischaracterizes the '627 and the contents of RU1, Ex. D-6 at 10-13 are also disputed. *See, e.g.*, BR2 ¶¶ 1030-38; '627 at 9:51-55. |
| | Fact 43.  The '627 patent discloses compliant layers that are co-extensive with each securement element and with the interposer, and thus the elongated slots (channels) are defined by the compliant layers.<br><br>'627 Patent, 23:37-39; RU-1, Ex. D6 at 11. | Disputed. ███████████████<br>████████████████████<br>UTC mischaracterizes the '627, and the contents of RU1, Ex. D-6 at 11 are also disputed. *See, e.g.*, BR2 ¶¶ 1030-38; '627 at 9:51-55. |
| | Fact 44.  Fig. 16 of the '627 patent discloses that each chip (8320) has a contact-bearing surface and contacts (8330) on such surface.<br><br>'627 Patent, 24:5, 24:24; RU-1, Ex. D-6 at 15. | Disputed. ███████████████<br>████████████ |
| | Fact 45.  The '627 patent discloses a plurality of separate semiconductor chips disposed in an array on an assembly tape, such that the contact-bearing surfaces face a common direction.<br><br>'627 Patent, Fig. 6; RU-1, Ex. D-6 at 15. | Disputed. ███████████████<br>████████████████████<br>Fig. 6 does not depict a contact-bearing surface of any chips.  '627 at Fig. 6. |
| | Fact 46.  The '627 patent discloses | Disputed. ███████████████ |

6416753

- 10 -

| | |
|---|---|
| abutting the contact-bearing chip surface against the compliant pads (8340 and 8303).<br><br>'627 Patent, Fig. 16; RU-1, Ex. D-6 at 16. | ▮▮▮ UTC mischaracterizes the '627, and the contents of RU1, Ex. D-6 at 16 are also disputed. *See, e.g.*, BR2 ¶¶ 1019-29, 1039-40; '627 at 9:51-55. |
| Fact 47. The '627 patent discloses attaching a plurality of chips to the compliant pads.<br><br>*Id*., Fig. 16, 16:44-48; RU-1, Ex. D-6 at 16-17. | Disputed. ▮▮▮ UTC mischaracterizes the '627 and the contents of RU1, Ex. D-6 at 16-17 are also disputed. *See, e.g.*, BR2 ¶¶ 1019-29, 1039-40, 1041-43. |
| Fact 48. The '627 patent discloses that the chips are electrically connected to terminals by "flexible, electrically conductive leads."<br><br>*Id*. at 4:66-5:4; RU-1, Ex. D-6 at 16. | Disputed. ▮▮▮ The contents of RU1, Ex. D-6 at 16 are also disputed. *See, e.g.*, BR2 ¶¶ 1019-29, 1039-40. |
| Fact 49. The '627 patent discloses that a semiconductor chip and the dielectric element (i.e. the support structure) define "an entire assembly."<br><br>*Id*. at Abstract; RU1, Ex. D-6 at 20-21. | Disputed. ▮▮▮ UTC has not identified a "support structure," UTC mischaracterizes the claims, and the contents of RU1, Ex. D-6 at 20-21 are also disputed. *See, e.g.*, BR2 ¶¶ 1015-18, 1019-29, 1039-40, 1041-43, 1044-46. |
| Fact 50. The '627 patent discloses a "stacked assembly," in which "any number of chips can be interconnected."<br><br>*Id*. at 33:28-30. | Disputed. ▮▮▮ UTC mixes embodiments of the '627. |
| Fact 51. The compliant layers disclosed in the '977 patent are disposed between the terminals and the structure.<br><br>RU1, Ex. A-6 at 7-9. | Disputed. ▮▮▮ UTC mischaracterizes the '977 and the contents of RU1, Ex. A-6 at 7-9 are also disputed. *See, e.g.*, BR2 ¶¶ 420-32. |
| Fact 52. The '977 patent discloses that the compliant layers are dielectric.<br><br>RU1 at ¶ 330 and Ex. A-6 at 7. | Disputed. UTC mischaracterizes the '977, and the contents of RU1, Ex. A-6 at 7 are also disputed. *See, e.g.*, BR2 ¶¶ 420-32. |
| Fact 53. The '977 patent discloses that the terminals are aligned with the compliant pads.<br><br>'977 Patent, 17:66-18:2; RU1, Ex. A-6 at 8-9. | Disputed. ▮▮▮ UTC mischaracterizes the '977. *See, e.g.*, BR2 ¶¶ 420-32, 433. |
| Fact 54. In the '977 patent, the compliant layer creates a "separation distance" between the chip and the terminals. | Undisputed. |

| | |
|---|---|
| RU1, Ex. A-6 at 7. | |
| Fact 55.  The '977 patent discloses the use of a chip as a structure and terminals being connected to the chip.<br><br>'977 Fig. 16; '977 Patent, 24:11-15; RU1, Ex. A-6 at 14-15. | Disputed.  ███████████████ ███████████████ ██████ The contents of RU1, Ex. A-6 at 14-15 are also disputed.  *See, e.g.*, BR2 ¶¶ 420-32. |
| Fact 56.  The '977 patent discloses a semiconductor chip having a face surface bearing contacts.<br><br>RU1, Ex. A-6 at 12-15. | The contents of RU1, Ex. A-6 at 12-15 are disputed.  *See, e.g.*, BR2 ¶¶ 420-32, 437, 438-39, 440-43. |
| Fact 57.  The '977 patent teaches connecting the terminals to the contacts via leads (8372 and 8348).<br><br>'977 Patent, 24:11-15; RU1, Ex. A-6 at 14-15. | Disputed.  ███████████████ ███████████████ ██████ The contents of RU1, Ex. A-6 at 14-15 are also disputed.  *See, e.g.*, BR2 ¶¶ 420-32, 437, 438-39, 440-43. |
| Fact 58.  The '977 patent discloses flexible leads electrically connecting terminals to chip surface contacts.<br><br>'977 Patent, Claim 1 and 4:66-67; RU-1, Ex. A-6 at 15-16. | Disputed.  ███████████████ ███████████████ ██████ The contents of RU1, Ex. A-6 at 15-16  are also disputed.  *See, e.g.*, BR2 ¶¶ 440-43. |
| Fact 59.  The '977 patent teaches the use of four securement elements of substantially uniform shape and size.<br><br>'977 Patent, Figs. 16, 17, and accompanying text. | Disputed.  ███████████████ ███████████████ ██████ '977 at Figs. 16, 17, 9:40-45. |
| Fact 60.  The '977 patent discloses that each securement element contains a coextensive compliant layer.<br><br>'977 Patent, 23:27-29. | Disputed.  UTC mischaracterizes the '977 patent.  '977 at 23:27-29. |
| Fact 61.  The '977 patent discloses discrete segments of a compliant layer that are of substantially uniform shape and size.<br><br>RU1, Ex. A-6 at 21-22. | Disputed.  '977.  UTC mischaracterizes the '977 patent.  The contents of RU1, Ex. A-6 at 21-22 are also disputed.  *See, e.g.*, BR2 ¶¶ 460-67; '977 at Figs. 16, 17, 9:40-45. |
| Fact 62.  The '977 patent teaches that the compliant layer is juxtaposed with the first surface of the substrate (i.e. the surface facing the chip).<br><br>'977 Patent, 23:27-31; RU1, Ex. E-6 at 4-7 and RU1, Ex. F-5 at 3-6. | The contents of RU1, Ex. E-6 at 4-7 and RU1, Ex. F-5 at 3-6 are disputed.  *See, e.g.*, BR2 ¶¶ 1366-75, 1376, 1719-28. |
| Fact 63.  The compliant pad disclosed in the '977 patent would have a given CTE. | Undisputed. |

| | | |
|---|---|---|
| | RU1, Ex. E-6 at 7-9 and RU1, Ex. F-5 at 5. | |
| | Fact 64.  The '977 patent discloses a chip connected to a compliant layer.<br><br>RU1, Ex. E-6 at 10 and Ex. F-5 at 9-11. | The contents of RU1, Ex. E-6 at 10 and Ex. F-5 at 9-11 are disputed.  *See, e.g.*, BR2 ¶¶ 1377, 1729. |
| | Fact 65.  The '977 patent discloses disposing encapsulant in each of the empty spaces surrounding the compliant layer underlying the interposer.<br><br>'977 Patent, 24:31-34; RU1, Ex. E-6 at 19 and Ex. F-5 at 12-16. | Disputed.  Mischaracterizes patent.  '977 at 24:25-36.  The contents of RU1, Ex. E-6 at 19 and Ex. F-5 at 12-15 are also disputed.  *See, e.g.*, BR2 ¶¶ 1378-84, 1730-1736. |
| | Fact 66.  The '977 patent discloses disposing encapsulant in each of the empty spaces within the compliant pad to form a composite layer between the chip unit and the -substrate.<br><br>'977 Patent, 14:31-35; Ex. E-6 at 15-18 and Ex. F-5 at 14. | Disputed.  Mischaracterizes patent.  '977 at 24:25-36.  The contents of RU1, Ex. E-6 at 15-18 and Ex. F-5 at 14 are also disputed.  *See, e.g.*, BR2 ¶¶ 1378-84, 1730-1736. |
| | Fact 67.  A POSITA at the time would know that the materials used to create encapsulant in a semiconductor package have a lower CTE than the materials used to create the compliant layers.<br><br>RU1, Ex. E-6 at 20 and Ex. F-5 at 16–17. | Disputed.  Also, Tessera's own patents cannot be used against the '480 for obviousness.  The contents of RU1, Ex. E-6 at 20 and Ex. F-5 at 16-17 are also disputed.  *See, e.g.*, BR2 ¶¶ 1385-88, 1737-40; RU3 216:21-217:4, 209:2-17. |
| | Fact 68.  The '977 patent discloses a method where some terminals are located within a periphery of the chip and some terminals are beyond a periphery of the chip.<br><br>'977 Patent, 22:39-41; *id.* 23:10-12; RU1, Ex. E-6 at 28-31. | Disputed.  ██████ ████████ The contents of RU1, Ex. E-6 at 28-31.  *See, e.g.*, BR2 ¶¶ 1405-06. |
| | | Additional facts:<br>████████████████ |

| | | |
|---|---|---|
| | | ███████████████ |
| **XII. Tessera's Demand For Royalties Outside Its Patent Rights Is Patent Misuse** | Fact 69.  Tessera demands royalties based on the asserted U.S. Patents for UTC's products, even if these products never came into the United States.<br><br>D.I. 210-4 at 1:9-13, 8:21-23. | Undisputed based on the terms of the Agreement that UTC willingly entered. Additional fact: UTC has refused to provide full discovery regarding which UTC products have a nexus with the U.S. |
| | Fact 70.  Tessera argued before the ITC that the respondents, █████ ███████████, were not entitled to protection from Tessera's infringement claims under the doctrine of patent exhaustion.<br><br>D.I. 210-4 at 2:22-27, 3:25-4:3, 13:5-14:10. | Disputed.  Incomplete and inaccurate. This ITC proceeding did not involve products on which licensees had paid royalties.  Ex. 12 ¶ 9; *Powertech v. Tessera*, 2014 U.S. Dist. LEXIS 5441, at *5 (N.D. Cal. Jan. 15, 2014); *see also Tessera, Inc. v. ITC*, 646 F.3d 1357, 1369-71 (Fed. Cir. 2011) ("***Because royalties were not paid or were paid late by some licensees,*** Tessera asserts that sales by those licensees did not trigger exhaustion of its patent rights." (emphasis added)).  Moreover, Tessera lost this argument both in the ITC and at the Federal Circuit.  *Tessera v. ITC*, 646 F.3d 1357, 1369-71 (Fed. Cir. 2011). |
| | Fact 71.  Tessera demands royalties based on the asserted European and Japanese patents, but has not shown that UTC has made or sold any products in Europe or Japan.<br><br>Dkt. No. 210-4 at 9:1-4. | Undisputed (except as to argumentative word "demands") based on the terms of the Agreement that UTC willingly entered.<br>Additional fact: UTC has refused to provide full discovery regarding which UTC products have a nexus with Europe or Japan or which UTC customers sell UTC products in Europe or Japan. |
| | | Additional Facts: Tessera hereby incorporates the facts cited in support of its motion for summary judgment of no patent misuse, as provided in Section II of the Separate Moving Statement filed with Tessera's Cross-Motion. |
| | | Additional Fact: UTC's licensing expert recognized in deposition that the Supreme |

6416753

| | | |
|---|---|---|
| | | Court approved of at least one license requiring worldwide royalties in *Automatic Radio*.  Ex. 10 at 50:11-15. |
| | | Additional Fact: UTC's licensing expert admitted that it does not constitute patent misuse to collect worldwide royalties when the agreement licenses non-patented technology.  Ex. 10 at 105:12-107:23. |
| | | Additional Fact: Tessera's licensing expert testified that companies regularly and willingly "enter into patent license agreements that provide for royalties to be calculated on a world-wide basis," and such agreements are particularly common with regard to a "supplier of large quantities of products in a complex, downstream, global supply chain," such as UTC.  GR ¶¶ 51, 53. |
| | | Additional Fact: Tessera's licensing expert testified that licenses that provide for royalties to be calculated on a world-wide basis "simplify[] administration" and provide both parties with benefits.  GR ¶ 57. |
| | | Additional Fact: UTC's licensing expert admitted that parties could in many circumstances agree to royalties without regard to geographic scope.  Ex. 10 at 37:12-38:4, 42:11-43:14, 46:13-48:1, 50:2-51:15, 105:12-107:23, 225:13-227:3, 229:2-24, 230:13-231:6. |
| | | Additional Fact: |
| | | Additional Fact: |
| | | Additional Fact: |
| | | Additional Fact: |

| | | 58. |
|---|---|---|
| | | Additional Fact: There is a global supply chain for semiconductors, there are many benefits of worldwide licenses and royalty obligations, including administrative convenience, as well as benefits to UTC's customers from a worldwide license and royalty payments.  Ex. 59 ¶¶ 9-19, 20-27, 47-49 |
| XIII.  UTC Does Not Owe Royalties For Placing wBGA Packages Into Modules | Fact 72. ███████████ ████████ ████████████ ██ | Disputed. ██████████████ ████████████████ █████████████████ █████████ |
| | Fact 73.  The placing of already-assembled packages into a module is called "module services."  RU2 at ¶¶ 64. | Disputed.  Vague and ambiguous.  Module servicing is part of the manufacturing process that typically involves the service of mounting packages to memory module boards, after which the memory module boards are generally sold and transferred to an end-products manufacturer.  BR1 ¶ 133; *see also, e.g.*, BD1 at 187:23-188:10. |
| | Fact 74.  UTC, or another company, makes a wBGA package when it makes the package itself.  RU2 at ¶¶ 62-64; BR1 at ¶ 133; BDT at 191:11-192:2. | Disputed.  Vague and ambiguous.  None of UTC's citations support its assertion that that UTC or another company only makes a wBGA package when it makes the package "itself."  Licenses commonly require royalty payments regardless of whether licensee makes products entirely on its own or with assistance of other companies.  *E.g.*, GR ¶ 47. |
| | Fact 75. ██████████████████ ████████████████████ █████████████████ | Disputed.  This "fact" and the deposition questioning it is purportedly predicated on are unintelligible. |
| | Fact 76. █████████████████████ █████████████████████ █████████████████████ | Disputed. █████████████████ █████████████████████ █████████████████████ |
| | Fact 77. ████████████████ ███████████████████ █████████████████ | Disputed. ████████████████ ████████████████████ ██████████████ |



Additional Facts:

XIV. Tessera Cannot Seek Royalties On Products Not Covered By The PLA

Fact 78.

Fact 79.



Additional Facts:

6416753

I attest that the evidence cited herein fairly and accurately supports or disputes the facts as asserted.

Dated:  January 21, 2016

Respectfully submitted,

IRELL & MANELLA LLP

By:      /s/ Joseph M. Lipner
                Joseph M. Lipner

*Attorneys for Plaintiff Tessera, Inc.*

6416753

- 19 -